UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANIE D. SCOTT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:17-cv-520-WTL-TAB ) |
| NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Stephanie D. Scott requests judicial review of the final decision of Defendant Nancy Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Scott's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Scott filed for DIB on November 1, 2013, and SSI on November 5, 2013, alleging she became disabled on August 12, 2012. Scott's applications were denied initially on January 13, 2014, and again upon reconsideration on June 19, 2014. Following the denial upon reconsideration, Scott requested and received a hearing in front of an Administrative Law Judge ("ALJ"). That hearing, during which Scott was represented by counsel, was held on September 9, 2015, before ALJ Scot Gulick. The ALJ issued his decision on October 28, 2015, denying Scott's claim. Scott requested review by the Appeals Council, and the Appeals Council denied the request for review. Scott then filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).[1] At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only, with the exception of DIB section cites where they provide information beyond that found in the SSI sections.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citation omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in her decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted).

### III. ALJ GULICK'S DECISION

ALJ Gulick determined at step one that Scott had not engaged in substantial gainful activity since August 12, 2012, the alleged onset date. Record at 13. At steps two and three, the ALJ concluded that Scott had the severe impairments of depression and anxiety, as well as non-severe physical impairments, including migraine headaches, acute sinusitis, lumbago, esophageal reflux, muscle spasm, cervical strain, irritable bowel syndrome, gastroesophageal reflux disease, and otitis media. R. at 13-14. At step four, the ALJ determined that Scott had the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform no more than simple, routine tasks in a work environment involving no more than simple work-related decisions; she can tolerate no more than occasional interaction with supervisors, co-workers, or the general public.

R. at 16-17. The ALJ also determined that Scott was unable to perform any past relevant work, R. at 21, but there were jobs that exist in significant numbers in the national economy that Scott could perform, R. at 22. Accordingly, the ALJ concluded that Scott was not disabled as defined by the Act.

## IV. **EVIDENCE OF RECORD**

The ALJ's decision, in combination with Scott's brief (Dkt. No. 18), aptly sets forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V. **DISCUSSION**

In her brief in support of her Complaint, Scott argues that the ALJ (1) erroneously gave little to no weight to her treating providers' opinions; (2) failed to consider her global assessment of functioning ("GAF") scores; and (3) failed to consider Scott's mother's third party statement.

### A. **Treating Providers**

Scott argues that the ALJ failed to give proper weight to the opinion of her treating psychologists, Scott Bischoff and Sharon L. McNeany. The ALJ afforded Bischoff's March 5, 2014, opinion that Scott would likely be unable to obtain or maintain meaningful employment little weight. R. at 20 (citing R. at 533). The ALJ reasoned as follows:

> While I recognize and respect the treating relationship, I find that this opinion is not supported by the totality of this record. Furthermore, the statement that a claimant is "disabled," "unable to work," can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner.

R. at 20. For the same reasons, he also afforded little weight to Bischoff's September 8, 2015, opinion that it was highly unlikely that Scott could be successful in a typical work environment given her current symptoms. *See* R. at 21 (citing R. at 637). The ALJ gave "no weight" to Dr.

4

McNeany's June 19, 2015, opinion that Scott was totally unable to participate in the work training activities necessary to obtain welfare benefits. *See id.* (citing R. at 642). Dr. McNeany based her opinion on Scott's inability to sit no more than 20 minutes and stand no more than 10 minutes without moving. R. at 642. The ALJ gave Dr. McNeany's opinion no weight because she is a mental health expert and "physical limitations cannot be properly assessed by an individual with mental health expertise." R. at 21.

The Seventh Circuit describes what is commonly referred to as "the treating physician rule" as follows:[2]

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it. But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted). "'If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'" *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2))); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("the ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to their opinions"). "If the ALJ discounts the physician's opinion after considering

---

[2] This is the law as it existed at the time of the ALJ's decision. For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies. Under that provision, no special or evidentiary weight is given to medical opinions or prior administrative medical findings.

5

these [§ 404.1527(c)] factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Scott argues that the ALJ should have afforded special deference, *i.e.*, controlling weight, to Bischoff's and McNeany's opinions because they are her treating providers. She also argues that the ALJ erred by not considering the "checklist factors" found in 20 C.F.R. § 404.1527(d) when he determined that he would give little to no weight to those opinions.

"[A] treating physician's opinion *regarding the nature and severity of a medical condition* is entitled to controlling weight" if certain circumstances are met. *Elder*, 529 F.3d at 415 (emphasis added) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). An ALJ, however, is under no obligation to entitle a treating provider's opinion regarding something other than a medical opinion controlling weight. Bischoff's March 5, 2014, opinion is not a medical opinion. Rather, it is a conclusory statement related to Scott's ability to work, a finding that is reserved for the Commissioner to make. *See* 20 C.F.R. § 404.1527(d) ("[Medical Source] [o]pinions on some issues [including a statement by a medical source that a claimant is disabled or unable to work] . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."); *see also Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) ("[T]o the extent that the ALJ discredited [the treating physician]'s conclusion that [the claimant] could not work, he rightly did so."). Bischoff did not provide reasons explaining why he believed Scott would be unable to obtain or maintain meaningful employment. He stated only that Scott's individual

6

therapy sessions "are focused on addressing symptoms of depression and anxiety, as well as Mrs. Scott's difficulties with anger and interpersonal relationships." R. at 533. Because Bischoff's opinion is not a medical one and regards an issue reserved for the Commissioner, the ALJ was not required to afford it special deference, and there was no reason for the ALJ to consider the checklist factors. Accordingly, substantial evidence supports the ALJ's opinion to give Bischoff's March 5, 2014, opinion little weight, and the ALJ must not review this opinion on remand.

The ALJ similarly afforded little weight to Bischoff's September 8, 2015, opinion. In that opinion, Bischoff concluded that "[i]t is highly unlikely [Scott] could be successful in a typical work environment given her current symptoms" and supported this conclusion with diagnoses and a description of Scott's symptoms. R. at 637. He noted that Scott "has consistently displayed high distractibility and difficulty focusing in session." *Id.* He also described several other issues that support the conclusion that "[i]t is highly unlikely [Scott] could be successful in a typical work environment." *Id.* The ALJ stated that "[a]s noted above, opinions regarding an individual's inability to work are reserved for the Commissioner." R. at 21. Without additional detail, he concluded that "the totality of this record, including the claimant's reported normal activities of daily living, support no more than the limitations described in the above-defined residual functional capacity." R. at 21.

Unlike the March 2014 opinion, Bischoff's September 8, 2015, opinion did not simply conclude that Scott is unable to work. Rather, Bischoff stated a medical opinion by listing diagnoses and describing symptoms that endorsed his conclusion that Scott was not likely to be successful in a typical work environment. Here, the ALJ's reference to issues reserved for the Commissioner is misplaced. Because Bischoff provided a medical opinion, the ALJ was

7

required to do more to explain the reason he afforded this opinion little weight. A generalized reference to "the totality of the record, including the claimant's reported normal activities of daily living" is insufficient. The ALJ was required to explicitly consider the regulatory factors found in 20 C.F.R. § 404.1527(c) and explain the weight he gave Bischoff's opinion, which he did not do. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (remanding case for ALJ to weigh regulatory factors when evaluating psychiatrist's opinion). This is not to say that Bischoff's September 8, 2015, opinion should receive controlling weight. Rather, the ALJ erred by assigning little weight to this opinion without considering the factors in 20 C.F.R. § 404.1527(c). On remand, the ALJ should explicitly examine the factors in 20 C.F.R. § 404.1527(c) and articulate reasons to support his conclusion regarding the weight he assigns this opinion.

The Court now turns to McNeany's opinion. She did not provide an opinion on an issue reserved for the Commissioner. She determined that Scott should be exempted from work training activities required to obtain welfare benefits. She based her opinion on an assessment she made of Scott's physical limitations – sitting no longer than 20 minutes, standing no longer than 10 minutes without moving. The ALJ gave no weight to McNeany's opinion, maintaining that "physical limitations cannot be properly assessed by an individual with mental health expertise." R. at 21. Generally, an ALJ may discount the medical opinion of a treating provider who is not a specialist relative to the opinion of a specialist discussing her area of specialty. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). In this instance, not only is McNeany not a specialist in the area in which she issued an opinion, as a psychologist, generally she is not trained to assess physical

8

limitations. Moreover, McNeany's opinion omits discussion of both the basis for her determination regarding Scott's physical limitations and why those limitations made it impossible for Scott to participate in work training activities. The ALJ provided good reasons for his decision to give no weight to McNeany's opinion. Accordingly, the ALJ need not reconsider this opinion on remand.

## B. GAF Scores

Scott contends that the "ALJ summarily dismisses the [GAF] scores . . . just because they are GAF scores." Dkt. No. 18 at 10. She argues that "[t]he ALJ did not determine whether [the] GAF scores, some as low as 45, had supporting evidence to be given greater weight," arguing that they should have been considered as opinion evidence, but were not.[3] *Id.* at 10-11. Contrary to Scott's argument, the ALJ discussed the GAF scores and noted that they "rang[ed] from 45 to 65, indicating serious to mild symptoms." R. at 21. He further explicitly stated that "a GAF score is opinion evidence" and explained that "the extent to which an adjudicator can rely on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise." *Id.* He determined the GAF scores to be "of limited evidentiary value as they reveal only snapshots of impaired and improved behavior." *Id.* As a result, he gave little weight to the scores. While the ALJ "is not required to address every piece of evidence or testimony, [he] must provide some glimpse into [his] reasoning." *Dixon*, 270 F.3d at 1176. The ALJ has done just that. Here, although he did not provide a detailed explanation of his reasoning, the ALJ

---

[3] The Court notes that the DSM-V, the latest version of the Diagnostic and Statistical Manual of Mental Disorders, abandoned the use of GAF scoring in 2013, but the Social Security Administration still instructs ALJs to treat GAF scores as medical opinion evidence. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018) (citations omitted).

9

referred to the factors applicable to evaluating the GAF scores, explained the GAF scores themselves, and explained in general terms why he afforded them little weight. The ALJ minimally articulated his reasons for affording the GAF scores little weight. Accordingly, the ALJ need not reconsider the GAF scores on remand.

### C. Third Party Statement

Scott also asserts that the ALJ erred in failing to address Diane Ripberger's third party statement. Scott argues that "20 C.F.R. § 404.1529 requires the ALJ to evaluate such evidence." Dkt. No. 18 at 11; *see also* 20 C.F.R. § 404.1529 ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work."). The Commissioner acknowledges that the ALJ did not weigh Ripberger's statement, but argues that this omission was harmless error because the issues raised in the statement reiterate Scott's own allegations. Dkt. No. 24 at 23-24. Because this case is otherwise already being remanded to the ALJ, the ALJ should consider Ripberger's statement on remand.

### VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 2/23/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication